IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., <br>      Plaintiff, <br>  v. <br><br>CEQUEL COMMUNICATIONS, LLC d/b/a SUDDENLINK COMMUNICATIONS and CSC HOLDINGS, LLC d/b/a OPTIMUM-CABLEVISION, <br>      Defendants. | Civil Action No. 18-1919-RGA |
| SPRINT COMMUNICATIONS COMPANY L.P., <br>      Plaintiff, <br>  v. <br><br>CHARTER COMMUNICATIONS, INC., CHARTER COMMUNCIATIONS HOLDINGS, LLC, SPECTRUM MANAGEMENT HOLDING COMPANY, LLC, CHARTER COMMUNICATIONS OPERATING, LLC, TIME WARNER CABLE, LLC, <br>      Defendants. | Civil Action No. 18-2033-RGA |

<u>MEMORANDUM OPINION</u>

Stephen J. Kraftschik, Christina B. Vavala, POLSINELLI PC, Wilmington, DE; Lauren E. Douville (argued), Lydia C. Raw (argued), Jordan T. Bergsten (argued), SHOOK HARDY & BACON, Kansas City, MO, Attorneys for Plaintiff.

Frederick L. Cottrell, III, Jason J. Rawnsley, Alexandra M. Ewing, Kelly E. Farnan, RICHARDS LAYTON & FINGER, P.A., Wilmington, DE; R. Scott Roe (argued), Benjamin Hershkowitz (argued), GIBSON DUNN & CRUTCHER, New York, NY; Charles K. Verhoeven (argued), David Eiseman (argued), QUINN EMANUEL URQUHART & SULLIVAN, LLP, San Francisco, CA; Deepa Acharya (argued), QUINN EMANUEL URQUHART & SULLIVAN, LLP, Washington, D.C., Attorneys for Defendants.

June 8, 2020

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before the Court is the issue of claim construction of various terms in U.S. Patent Nos. 6,754,907 ("the '4,907 patent") and 6,757,907 ("the '7,907 patent") (collectively, "the '907 Patents"). I have considered the Parties' Joint Claim Construction Brief. (D.I. 96). I heard oral argument on May 28, 2020.

## I.   BACKGROUND

The '4,907 and '7,907 patents are generally directed to systems and methods for providing enhanced video-on-demand services. Video-on-demand systems "offer[] an individual viewer various selections from a video content library for viewing on-demand," including video such as "movies, television shows, documentaries, news, and sports." (*See* D.I. 76, Ex. A at 1:13-17). The '907 patents allow users to "use a portable computer connected over second communications system for remote control" such that the users "can control the video display using their portable computer," instead of being limited to a television/set-top box pair. (*See id.* at 1:35-41).

## II.   LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v.*

*Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  Of these sources, "the specification is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

3

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation and internal quotation marks omitted).

### III. CONSTRUCTION OF AGREED-UPON TERMS

I adopt the following agreed-upon constructions:

| Claim Term | Construction |
| --- | --- |
| "control screen signal" ('4,907 patent claims 1, 2, 10, 11, 16; '7,907 patent claims 1, 21, 38) | "a signal that defines a control screen" |
| "[Implement/implementing] [a/the] viewer control selection" ('4,907 patent claims 1, 10, 12) | "in response to the video control signal, implementing a viewer control selection" |
| "viewer control selection" ('4,907 patent claims 3, 10, 12) | "a control selection made by a viewer" |
| "[transfer/transferring] [video content signals/the video content signals]" ('4,907 patent claims 1, 10, '7,907 patent claim 23) | "in response to the video control signal, transferring [video content signals/the video content signals]" |
| "[transfer/transferring] [first/second/the] video signals" ('7,907 patent claims 21, 23, 25, 34, 36) | "in response to the viewer control signal, transferring [first/second] video signals" |
| "the video content selection signal" ('4,907 patent claim 6) | "the video content menu selection signal" |

### IV. COLLATERAL ESTOPPEL

On February 17, 2012, Comcast sued Plaintiff for patent infringement in the Eastern District of Pennsylvania. In its counterclaims, Plaintiff alleged that Comcast's video-on-demand systems infringed the '907 patents. The parties in the *Comcast* case disputed certain claim terms that are also disputed in this case, specifically, "operating a video-on-demand system," "video control signal," and "viewer control signal." *Comcast Cable Commc'ns, LLC v. Sprint*

4

*Commc'ns Co.*, 38 F. Supp. 3d 589, 609-13 (E.D. Pa. 2014). After a *Markman* hearing, the Court agreed with Comcast's argument that each of these claims should be construed to exclude the use of a set-top box for remote control of a video-on-demand system. *Id.* at 617. The Court subsequently granted to Comcast summary judgment of non-infringement of the '907 patents. *See Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co.*, 203 F. Supp. 3d 499, 557-58 (E.D. Pa. 2016).

Defendants argue that Plaintiff is barred under the doctrine of collateral estoppel, also known as issue preclusion, from seeking new claim constructions for three terms the *Comcast* court already construed and relied upon in issuing its judgment. The three terms are "operating a video-on-demand system," "video control signal," and "viewer control signal." (D.I. 96 at 13). Plaintiff argues that collateral estoppel does not apply here because the issues are not identical and the prior claim constructions were not essential to summary judgment. (*Id.* at 18).

The Federal Circuit applies the law of the regional circuit in determining whether collateral estoppel applies to another district court's claim construction. *See RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1261 (Fed. Cir. 2003).[1] Under Third Circuit law, in order for collateral estoppel to apply, a party must demonstrate that "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (citations omitted). The Third Circuit also considers whether the party being precluded "had a full and fair opportunity to litigate the issue in question in the prior

---

[1] Nonetheless, the Federal Circuit applies its "own precedent to those aspects of [a collateral estoppel] determination that involve substantive issues of patent law." *Ohio Willow Wood Co. v. Alps S.*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).

action" and "whether the issue was determined by a final and valid judgment." *Id.* (citations omitted). Here, the issue was litigated and Plaintiff, the party being precluded from relitigating the issue, was fully represented in the prior action. *See Comcast*, 203 F. Supp. 3d at 507-08.

### A. The Issues are Identical

Defendants characterize the "issue" for purposes of issue preclusion as being the disclaimer of a set-top box for remote control of a video-on-demand system. (D.I. 96 at 13-14). The *Comcast* court found such a disclaimer to exist and incorporated that disclaimer into its constructions of the terms "operating a video-on-demand system," "video control signal," and "viewer control signal." *Comcast*, 38 F. Supp. 3d at 609-13. Defendants ask that this Court likewise hold that the '907 patentees disclaimed the use of a set-top box for remote control and to reflect this disclaimer in its construction of these same terms. (D.I. 96 at 14). Plaintiff argues that the system claims in the present action differ from the method claims previously construed in the *Comcast* action; thus, the "issue" relating to the system claims is not identical. (*Id.* at 18).

The Federal Circuit has stated, "Our precedent does not limit collateral estoppel to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013); *see also Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1352 (Fed. Cir. 2018) ("Importantly, our precedent makes clear that collateral estoppel is not limited to patent claims that are identical."). Where a prior district court has construed a term in an asserted patent claim and the same term is subsequently disputed, this Court has held that the issues are identical. *See Biovail Labs. Int'l SRL v. Intelgenx Corp.*, 2010 WL 5625746, at *4 (D. Del. Dec. 27, 2010).

Plaintiff asserts claims here that it previously asserted in the *Comcast* case, including claim 10 of the '4,907 patent and claims 21 and 23 of the '7,907 patent. *(*D.I. 103). The *Comcast* court granted summary judgment based on the as-construed "operating a video-on-demand system" limitation, which is not found in various apparatus claims asserted by Plaintiff in this case. All asserted claims here, however, require either a "viewer control signal" or "video control signal," which the *Comcast* court construed to incorporate the disclaimer of a set-top box for remote control, and which was a basis for granting summary judgment. *Comcast*, 203 F. Supp. 3d at 554.

I therefore find that the relevant "identity of the issues" is whether the '907 patentees disclaimed the use of a set-top box, and I find that the issues are identical.

## B. The Previous Determination Was Necessary to the Decision

Plaintiff argues that the *Comcast* court's claim constructions were not essential to the court's summary judgment order because the court did not apply its own constructions in reaching its decision. (D.I. 96 at 20).

For collateral estoppel to apply, the *Comcast* court's prior claim constructions must have been essential to the court's final judgment of non-infringement. *Burlington N. R.R. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995). While claim constructions generally do not have preclusive effect because they are not final orders, the Federal Circuit has stated collateral estoppel applies to a claim construction ruling upon the entry of a final judgment in which the court construes the claim at issue, as long as the construction was "essential" to the final judgment. "[W]here a determination of the scope of patent claims was made in a prior case, and the determination was essential to the judgment there on the issue of infringement, there is collateral estoppel in a later case on the scope of such claims, i.e., the determined scope cannot

7

be changed." *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 655 (Fed. Cir. 1984); *see also Pfaff v. Wells Elecs, Inc.*, 5 F.3d 514, 518 (Fed. Cir. 1993) ("The prior claim interpretation has issue preclusive effect in the present case insofar as it was necessary to the judgment of noninfringement in the previous case.").

Plaintiff contends that the Court's non-infringement analysis "recast the scope of disclaimer to exclude any involvement of the set-top box with the video-on-demand system prior to the accused method being fully performed." (D.I. 96 at 20, citing *Comcast*, 203 F. Supp. 3d at 554). Plaintiff thus concludes that the Court did not adhere to its claim construction for "operating a video-on-demand system" when it ruled in Comcast's favor on summary judgment. (*Id.*).

In granting summary judgment of non-infringement, the *Comcast* court held, "No reasonable finder of fact could conclude that the start session messages sent by the set-top box in Comcast's system are not the disclaimed 'use of a set-top box for remote control of the video-on-demand system'." *Comcast*, 203 F. Supp. 3d at 557. The Court held:

> There is no ambiguity in the Court's prior claim construction, which included the limitation "without the use of a set-top box for remote control of the video-on-demand system" in the preamble of all of the asserted claims of the '907 patents. The set-top box cannot be involved in remote control of the VOD system, at any step, prior to the VOD system sending video to the television. If the set-top box is involved, the limitation of the preamble is not met and there is no infringement.
>
> In Comcast's Remote Tune system, it is undisputed that before any video content is sent by the VOD system, the set-top box sends a start session message to the VOD system. That message includes, among other things, the video content selected by the user. Without the communications sent by the set-top box to the VOD system, the VOD system does not send video content to the television and nothing happens. Thus, the set-top box is involved in remote control of the VOD system in order for Comcast's Remote Tune system to function.

*Id.* at 554. The Court appears to have relied on its prior construction, which already precluded upstream messaging "prior to the VOD system sending video to the television," to reach its conclusion of non-infringement. *Id.*

The *Comcast* court's constructions of the "viewer control signal" and "video control signal" limitations also were essential to its summary judgment determination. The Court construed these terms to require the respective signals to be "generated and processed without the involvement of a set-top box for remote control." *Comcast*, 38 F. Supp. 3d at 612-13. In its summary judgment order, the court explained that Comcast's video-on-demand system was not within the scope of these claim limitations (as disclaimed) because a set-top box was involved to "generate and process" such signals. The Court stated:

> Moreover, to infringe the '907 patents, the VOD system must implement a "viewer control signal" that is "generated and processed without the involvement of a set-top box for remote control" . . . . The viewer control signal is not "implemented" and "generated and processed," until the processing system transfers video signals to either the first communication interface or the second communication interface. In Comcast's Remote Tune, no video is transferred to the first communication interface (i.e., Comcast's coaxial cable network) until after the set-top box sends a start session message to the VOD system. Thus, the set-top box is necessarily involved in generating and processing the viewer control signal.

*Comcast*, 203 F. Supp. 3d at 554-55.

I thus find that the *Comcast* court's claim constructions applying disclaimer were essential to the court's judgment of non-infringement.

### C. The Previous Judgment was Final

Plaintiff contends that because it did not have an opportunity to appeal the *Comcast* court's summary judgment and claim construction rulings it would be "fundamentally unfair" to apply collateral estoppel in this case. (D.I. 96 at 23-25). But Plaintiff filed a notice of appeal, subsequent to which it entered into a settlement with Comcast. (*Id.* at 23-24).

9

The parties agree that there is no controlling case from the Federal Circuit on the issue of the finality of a judgment when the case is settled on appeal. Thus, I will start by considering black letter law. The Restatement (2d) of Judgments states, "for purposes of issue preclusion . . . final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Section 13, cmt. g. The test for finality is whether the prior decision was "adequately deliberated and firm" or "avowedly tentative," and whether the parties were fully heard in the prior proceeding. *Id.* "[T]hat the decision was subject to appeal or was in fact reviewed on appeal [is a] facto[r] supporting the conclusion that the decision is final for the purpose of preclusion." Reporter's note cmt. g; *accord Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1135 (Fed. Cir. 1985).

Courts have held that collateral estoppel applies upon entry of a case dispositive order, even when parties settle before entry of final judgment. *Owens v. Residential Credit Sol'ns, Inc.*, 2015 WL 1566168, at *6 (W.D. Pa. April 8, 2015). In *Owens*, the Court found that the plaintiff's decision "to settle and dismiss the case with prejudice for economic reasons instead of appealing does not change the fact that a final decision by the district court was made on the matter," and plaintiff's argument to the contrary "would render meaningless every order disposing of an issue or party in action where a settlement is subsequently reached." *Id.* In *Free Speech Coalition, Inc. v. Attorney General of United States*, the Court noted that factors to consider in determining finality are "whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." 677 F.2d 519, 541 (3d Cir. 2012).  Here, the prior district court case was completely adjudicated and Plaintiff was present and had a full and fair opportunity to litigate the case. The *Comcast* court issued a final judgment, and Plaintiff appealed that judgment before it settled. This is distinguishable from *RF*

10

*Delaware, Inc.,* in which the court held that collateral estoppel did not apply to bind a district court to claim constructions in rulings on partial summary judgment by another district court in a case involving the same patents. 326 F.3d at 1261-62. That case ended in an extrajudicial settlement without complete adjudication even as to liability; there was no evidence that an evidentiary hearing was conducted to construe the claims of the patents before the summary judgment orders were issued, and the other court did not put the parties on notice that the orders could have preclusive effect.

The cases cited by Plaintiff are distinguishable from this case. In *Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*, the Court declined to apply collateral estoppel because the moving party had not raised the collateral estoppel defense until after the issue had already been re-litigated in the second case. 692 F. Supp. 2d 487, 502 (M.D. Pa. 2010). In fact, the *Arlington* court found that but for the timing issue, the prior claim construction would otherwise be entitled to issue preclusive effect. *Id.* at 501. "When a court provides a *Markman* interpretation of a claim's language, and that interpretation was essential to a final resolution of a dispute over infringement, a party to the suit is precluded from seeking a different interpretation of the same language in a subsequent dispute." *Id.* In *Graco Children's Products., Inc. v. Regalo International, LLC*, the court noted that granting preclusive effect to claim construction may have a chilling effect on settlement and increase appeals to correct unduly narrow claim constructions. 77 F. Supp. 2d 660, 664 (E.D. Pa. 1999). The Court stated, "To apply issue preclusion to a claim interpretation issue decided in a prior infringement adjudication, 'the interpretation of the claim had to be the reason for the loss [in the prior case] on the issue of infringement.'" *Id.* (internal citations omitted). While the claim interpretation led to the court's summary judgment order in the instant case, in *Graco*, the Court's finding of non-infringement

was based on the doctrine of equivalents, making the court's claim construction not essential to the final judgment. *Id.* In *Kollmorgen Corp. v. Yaskawa Electric Corp.*, another case cited by Plaintiff, the Court also noted that parties to a settlement may lack incentive to settle if a *Markman* ruling is expected to have a preclusive effect on other potential patent actions. 147 F. Supp. 2d 464, 468 (W.D. Va. 2001). There, however, the parties settled the prior case after a claim construction order without any further findings or judgment on the merits of the case. *Id.*

"For the purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013) (internal citations omitted). A settlement during appeal when the *Comcast* court's order was final and appealable under Rule 54 does not preclude a finding of collateral estoppel. *See Free Speech Coalition*, 677 F.3d at 541; *see also Biovail Labs. Int'l SRL v. Intelgenx Corp.*, 2010 WL 5625746, at *3-4 (D. Del. Dec. 27, 2010); *Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F. 3d 1344, 1357-60 (Fed. Cir. 2017) (applying Eighth Circuit law, finding collateral estoppel applied to patentee given prior district court's construction of two claim terms and granting summary judgment of non-infringement in subsequent case in favor of defendant).

I find that the *Comcast* court's summary judgment of non-infringement as to the '907 patents constituted a final and valid judgment.

### D. Summary

While there does not appear to be Federal Circuit guidance on the specific issue of how a party's choice to settle on appeal affects the determination of whether the prior judgment can be considered final, the issue is not entirely new to this district. This Court in *Biovail Laboratories* considered whether collateral estoppel applied based on a prior decision of the Central District of

California, which had granted summary judgment of non-infringement based on its construction of a relevant claim term. 2010 WL 5625746, at *3-4. The patentee appealed the decision but later withdrew its appeal. *Id.* at *4. The Court found that each of the requirements for application of collateral estoppel was met. *Id.*

      I agree with *Biovail*. I find that all the elements of collateral estoppel are met in this case.

## V.    CONSTRUCTION OF DISPUTED TERMS

      For the reasons discussed above, I will follow the claim construction of the *Comcast* court for the first three disputed terms. *See Comcast*, 38 F. Supp. 3d at 617.

1. "operating a video-on-demand system" ('4,907 patent, claim 10; '7,907 patent, claim 21) and "a video-on-demand system" ('4,907 patent, claim 1; '7,907 patent, claim 1)

    a. *Plaintiff's proposed construction*: "operating a system where video is distributed on demand" and "a system where video content is distributed on demand"

    b. *Defendants' proposed construction*: "operating a video-on-demand system without the use of a set-top box for remote control of the video-on-demand system" and "a video-on-demand system without a set-top box for remote control of the video-on-demand system"

    c. *Court's construction*: "operating a video-on-demand system without the use of a set-top box for remote control of the video-on-demand system" and "a video-on-demand system without a set-top box for remote control of the video-on-demand system"

2. "video control signal" ('4,907 patent, claims 1, 10)

    a. *Plaintiff's proposed construction*: Plain and ordinary meaning; no construction necessary.

    b. *Defendants' proposed construction*: "a video control signal generated and processed without the involvement of a set-top box for remote control of the video-on-demand system"

    c. *Court's construction*: "a video control signal generated and processed without the involvement of a set-top box for remote control of the video-on-demand system"

3. "viewer control signal" ('7,907 patent, claims 1, 21, 23)

  a. *Plaintiff's proposed construction*: "signal relating to a display for viewing video distributed from an on-demand system"

  b. *Defendants' proposed construction*: "a viewer control signal generated and processed without the involvement of a set-top box for remote control of the video-on-demand system"

  c. *Court's construction*: "a viewer control signal generated and processed without the involvement of a set-top box for remote control of the video-on-demand system."

4. "video content signals" / "video signals" ('4,907 patent, claims 1, 6, 10; '7,907 patent, claims 1, 21, 23, 25, 34, 36)

  a. *Plaintiff's proposed construction*: "signals relating to video selected from an on-demand video content library"

  b. *Defendants' proposed construction*: "signals consisting of the on-demand video content"

  c. *Court's construction*: "on-demand video content"

The specifications describe that the "video [content] signals" *are* the selected on-demand video content transferred to the viewer. The '907 patents state, "The processing system processes the video content menu selection signal to responsively transfer the selected video content as video signals." ('4,907 patent at 4:24-26; *see also id.* at 3:57-59 ("transfer a preview of the selected video content as video signals")). Each embodiment in the '907 Patents describes that it is the video content that is transferred over the communication systems.

Nothing in the claims suggests that the "video [content] signals" cannot include other non-video content also, such as metadata or packet header information. The patent specifications do not restrict the content of "video [content] signals" as Defendants propose by their use of the words "consisting of." (*See, e.g.*, Ex. A, '4,907 patent at 2:54-67, 3:57-4:4, 4:24-60; Ex. B, '7,907 patent at 3:1-14, 4:5-19, 4:39-48). Absent "any express disclaimer or independent

lexicography in the written description that would justify adding [a] negative limitation," I will not import one. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). This term shall have the meaning that is clear from the claims and the specification: "on-demand video content."

5. "[Transferring/receiving] a [video/viewer] control screen signal [to/from] a second communication system"

   5.1. "transferring a control screen signal [indicating a control screen] to a second communication system" ('4,907 patent, claim 10; '7,907 patent, claim 21)

       a. *Plaintiff's proposed construction*: Plain and ordinary meaning; no construction necessary.

       b. *Defendants' proposed construction*: "transferring a control screen signal [indicating a control screen] to a second communication system from a second communication interface." In the alternative: indefinite.

       c. *Court's construction*: No construction necessary.

   5.2. "receiving a [video/viewer] control signal from the second communication system" ('4,907 patent, claim 10; '7,907 patent, claim 21)

       a. *Plaintiff's proposed construction*: Plain and ordinary meaning; no construction necessary.

       b. *Defendants' proposed construction*: "receiving a [video/viewer control signal] from the second communication system through a second communication interface." In the alternative: indefinite.

       c. *Court's construction*: No construction necessary.

I do not think there is a basis to read in Defendants' additional limitation, and I decline to do so. The proposed additional limitation is the only proposed construction by either side. Without it, there is no need for construction.

## IV. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.

15